UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILBER LEONARD ROSEMAN,

                Plaintiff,

v.

UNKNOWN WOLTHUIS et al.,

                Defendants.

_____/

Case No. 1:23-cv-568

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis* in a prior order. (ECF No. 5.) Additionally, in a prior order, the Court referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program and entered an order staying the case for any purpose other than mediation. (ECF No. 9.) The case was removed from early mediation on August 24, 2023, pursuant to Defendant Wellpath Healthcare's request. (ECF Nos. 11, 12.)[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). These provisions of the PLRA are applicable at "any time" during an "action or appeal." 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

---

[1] The stay of this proceeding that was entered to facilitate mediation will be lifted, and the Court will direct the agency having custody of Plaintiff to commence collection of the filing fee as outlined in the Court's prior order granting Plaintiff leave to proceed *in forma pauperis*.

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>Discussion</u>

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Wellpath Healthcare (Wellpath), and the following MTU officials and medical personnel: Corrections Officers Unknown Wolthuis and Unknown Parties #1 and #2, named as John Doe #1 and John Doe #2; Registered Nurse Patricia Brock; Lieutenant Unknown Perez; and Warden Melinda Braman. (Compl., ECF No. 1, PageID.1–3.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.1.)

In Plaintiff's complaint, he alleges that on November 23, 2022, at around 9:00 p.m., he was in his cell with the door closed. (*Id.*, PageID.6.) Plaintiff's cellmate, inmate Badu, "walked past the officer's desk, in plain view of the officers working that shift, with a full cup of a boiling liquid substance." (*Id.*) Inmate Badu then opened Plaintiff's cell door and threw the "substance directly at Plaintiff, burning his neck, shoulder, chest, and arm." (*Id.*) Plaintiff screamed for help and "for his life from the pain." (*Id.*) Thereafter, "[w]ith a direct view of inmate Badu, Defendant Wolthuis directly instructed inmate Badu to 'go into the cell.'" (*Id.*) Plaintiff further claims that Defendants Wolthuis and Unknown Parties #1 and #2 had an unobstructed view of Badu, but did nothing to deescalate the situation, despite Plaintiff "repeatedly yelling for help," and that Defendants

"observed inmate Badu with rage in his face and his fists poised for an assault standing outside the cell door." (*Id.*)

When Plaintiff realized that Defendants were "instructing Badu to enter the cell," Plaintiff closed the cell door and locked it, preventing inmate Badu from entering the cell. (*Id.*, PageID.6–7.) Subsequently, Plaintiff was handcuffed and taken to health care. (*Id.*, PageID.7.) Plaintiff claims that there was no reason to handcuff him other than "to humiliate him" because he had done nothing wrong. (*Id.*)

Upon Plaintiff's arrival at healthcare, Defendant Brock "minimized Plaintiff's burns." (*Id.*) Plaintiff explained that the pain from the burns on his neck and chest was a level 10 out of 10. (*Id.*) Defendant Brock advised that healthcare could not "do anything more for Plaintiff and that Plaintiff should 'keep [a] cool compress on [his] shoulder and utilize Ibuprofen'" for pain relief. (*Id.*) Plaintiff alleges that the Ibuprofen "arrived weeks later due to [the] store delivery system," and that ultimately the Ibuprofen did not remedy his pain and the scarring. (*Id.*, PageID.7–8.) Plaintiff also alleges that he could not use a cool compress because they were not available through the prison store "nor are they available anywhere else other than Prison Healthcare Services." (*Id.*) Plaintiff states that his "burns began to blister," his "skin became discolored," and his "daily normal activities were cut to not even being able to leave his cell for fear of an assault." (*Id.*, PageID.8.)

At some point, Plaintiff spoke with Defendant Perez about the incident with inmate Badu. (*Id.*, PageID.7.) Defendant Perez reviewed the camera footage of the incident and agreed with Plaintiff's version of the events. (*Id.*)

Plaintiff also filed a grievance about the incident. (*Id.*, PageID.8.) His grievance was denied at step I, and then Defendant Braman denied the grievance at step II. (*Id.*)

3

Plaintiff alleges that he "was left to care for his burns himself with no medical resources and no help from . . . Defendant Wellpath." (*Id.*, PageID.9.) Plaintiff further alleges that Defendants Wolthuis and Unknown Parties #1 and #2 "never documented the assault in the daily log-book." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment, as well as under state law.[2] (*Id.*, PageID.9–10.) The Court also construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim against Defendant Braman. (*See id.*, PageID.8.) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.10–11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

---

[2] When summarizing his claims in the introduction of his complaint, Plaintiff uses the word "retaliatory," among others descriptive words, to describe Defendants' actions. (Compl., ECF No. 1, PageID.4.) However, when setting forth his factual allegations, Plaintiff makes no reference to retaliatory action, and he presents no claims regarding any alleged retaliatory action. Under these circumstances, any intended claim regarding alleged retaliatory action by Defendants would be subject to dismissal for failure to state a claim because Plaintiff fails to allege any facts in support of such a claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *cf. Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Defendant Wellpath

Plaintiff names Wellpath as a Defendant in this action. (Compl., ECF No. 1, PageID.1, 2–3.) A private entity, such as Wellpath, that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc.*

5

*Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Wellpath, Wellpath's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

Here, Plaintiff alleges that he "was left to care for his burns himself with no medical resources and no help from . . . Defendant Wellpath." (Compl., ECF No. 1, PageID.9.) Although Plaintiff believes that Defendant Wellpath provided inadequate medical care to him, Plaintiff fails to allege the existence of a custom or policy of Wellpath, let alone that any policy or custom was

the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of Wellpath, Defendant Wellpath will be dismissed.

### B.    Official Capacity Claims

Plaintiff sues remaining Defendants Wolthuis, Unknown Parties #1 and 2, Brock, Perez, and Braman in their official and individual capacities. (Compl., ECF No. 1, PageID.1.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks a declaratory judgment and monetary damages. (Compl., ECF No. 1, PageID.10–11.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again. In fact, Plaintiff complains about events that occurred almost one year ago. Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### C.    Individual Capacity Claims

#### 1.    Defendant Braman

As to Defendant Braman, Plaintiff alleges that Defendant Braman denied Plaintiff's grievance at step II. (Compl., ECF No. 1, PageID.8.) Plaintiff does not provide any further factual allegations against Defendant Braman.

As an initial matter, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, although it is clear that Plaintiff disagreed with Defendant Braman's response to his grievance,

because Plaintiff has no liberty interest in the grievance process—including any response to his grievances—Defendant Braman's conduct did not deprive Plaintiff of due process.

Further, Plaintiff seeks to hold Defendant Braman, the warden at MTU, liable for the actions of her subordinates; however, government officials, such as Defendant Braman, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant Braman encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendant Braman was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege Defendant Braman engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against her.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a claim against Defendant Braman.

### 2.     Eighth Amendment Claims Against Defendants Wolthuis, Unknown Parties #1 and #2, Perez, and Brock

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

The Court addresses Plaintiff's Eighth Amendment claims against Defendants Wolthuis, Unknown Parties #1 and #2, Perez, and Brock in turn below. (Compl., ECF No. 1, PageID.9–10.)

### a.      Defendants Wolthuis and Unknown Parties #1 and #2

As relevant to Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Wolthuis and Unknown Parties #1 and #2, the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

In this action, Plaintiff alleges that on November 23, 2022, at around 9:00 p.m., Plaintiff's cellmate, inmate Badu, "walked past the officer's desk, in plain view of the officers working that shift, with a full cup of a boiling liquid substance." (Compl., ECF No. 1, PageID.6.) Inmate Badu then opened Plaintiff's cell door and threw the substance "directly at Plaintiff, burning his neck, shoulder, chest, and arm." (*Id.*) Thereafter, Plaintiff claims that "[w]ith a direct view of inmate Badu, Defendant Wolthuis directly instructed inmate Badu to 'go into the cell.'" (*Id.*) Plaintiff further claims that Defendants Wolthuis and Unknown Parties #1 and #2 had an unobstructed view of Badu, but did nothing to deescalate the situation, despite Plaintiff "repeatedly yelling for help," and that Defendants "observed inmate Badu with rage in his face and his fists poised for an assault standing outside the cell door." (*Id.*)

12

To the extent that Plaintiff seeks to hold Defendants Wolthuis and Unknown Parties #1 and #2 liable for their failure to prevent the attack by inmate Badu, as explained below, Plaintiff fails to state such a claim. As an initial matter, although Plaintiff claims that inmate Badu walked past the officer's station with a cup of a boiling liquid, Plaintiff does not specifically allege that these Defendants were at the officer's station at that time, or even if they were at the officer's station, that they saw inmate Badu walk by. Furthermore, even setting this issue aside, Plaintiff does not allege sufficient facts to show that these Defendants would have known what was in the cup or that they knew that inmate Badu should not have had the cup in that area. Plaintiff also does not allege sufficient facts to suggest that he faced a risk of harm from inmate Badu prior to the attack, let alone that these Defendants knew that Plaintiff faced such a risk. To the contrary, Plaintiff alleges that inmate Badu was his cellmate, so even if these Defendants had seen inmate Badu heading towards Plaintiff's cell, based on the facts alleged by Plaintiff, they would not have had a reason to believe that Plaintiff faced a substantial risk of harm from inmate Badu, who was his cellmate at that time.

Plaintiff also seeks to hold Defendants Wolthuis and Unknown Parties #1 and #2 liable for their actions immediately following the attack by Plaintiff's cellmate. Specifically, Plaintiff faults Defendant Wolthuis for directing inmate Badu "to 'go into the cell'" immediately following the incident, and he faults Defendants Unknown Parties #1 and #2 for doing "nothing to deescalate the situation" despite Plaintiff "repeatedly yelling for help" after the incident. (*Id.*) Plaintiff also claims that Defendants "observed inmate Badu with rage in his face and his fists poised for an assault standing outside the cell door." (*Id.*) However, Plaintiff fails to allege sufficient facts to suggest that these Defendants knew that Plaintiff faced a substantial risk of harm following the incident with inmate Badu. As an initial matter, Plaintiff does not allege that he suffered any harm

13

as a result of Defendants' actions *after* the incident with Plaintiff's cellmate. Moreover, Plaintiff does not allege that Defendants saw inmate Badu throw the liquid at Plaintiff—Plaintiff alleges that Defendants could hear his cries for help following the attack by inmate Badu and that Defendants had "a direct view of inmate Badu," but Plaintiff does not allege that they saw what happened in the cell. And, regardless, as explained above, Plaintiff alleges no facts to suggest that Defendants knew that inmate Badu had boiling liquid in the cup. Showing that defendants have knowledge of a substantial risk of harm is crucial when stating a failure to protect claim. Even if Defendants saw Badu throw the contents of the cup into the cell, seeing someone throw a room temperature liquid is very different than knowing that someone has thrown a boiling liquid. Therefore, under the circumstances alleged by Plaintiff, he has simply failed to show that Defendants Wolthuis and Unknown Parties #1 and #2 were deliberately indifferent to a substantial risk of harm to Plaintiff following the incident with inmate Badu.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment failure-to-protect claim against Defendants Wolthuis and Unknown Parties #1 and #2.[3]

---

[3] Plaintiff also alleges that after the incident with inmate Badu, Plaintiff was handcuffed and taken to healthcare. (Compl., ECF No. 1, PageID.7.) Plaintiff claims that there was no reason to handcuff him other than "to humiliate him" because he had done nothing wrong. (*Id.*) To the extent Plaintiff intended to bring an Eighth Amendment claim about the fact that he was handcuffed while being transported to healthcare, Plaintiff fails to state such a claim. As an initial matter, Plaintiff does not allege that any Defendants were involved in transporting him to healthcare. Moreover, even if Defendants were involved in handcuffing Plaintiff and transporting him to healthcare, Plaintiff only alleges that being handcuffed "humiliate[d]" him. (*Id.*) Plaintiff has not alleged any facts to suggest that handcuffing him compromised his health or safety or deprived him of a basic human need. *See, e.g.*, *Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir. 1996) (affirming dismissal of Eighth Amendment claim regarding plaintiff's placement on full restraint status because condition was not unduly harsh and inmate did not assert facts to suggest that prison officials were deliberately indifferent to his health or safety); *Vallade v. Fischer*, No. 12-CV-231M, 2012 WL 4103864, at *3 (W.D.N.Y. Sept. 13, 2012) ("It is well-established that handcuffing an inmate is a regular incident of prison life which does not *per se* violate the Eighth Amendment.").

**b.      Defendant Perez**

As to Defendant Perez, Plaintiff alleges that at some point following the attack by Plaintiff's cellmate, he spoke to Defendant Perez about the incident, and Defendant Perez reviewed the camera footage of the incident and agreed with Plaintiff's version of the events. (*Id.*, PageID.7.) As explained below, Plaintiff fails to state any claim upon which relief may be granted against Defendant Perez.

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff fails to allege sufficient facts to show that Defendant Perez had any involvement in the alleged violations of Plaintiff's constitutional rights. Specifically, Plaintiff does not allege that Defendant Perez was present when Plaintiff's cellmate threw boiling liquid at Plaintiff or that Defendant Perez had any knowledge of a risk of substantial harm to Plaintiff prior to the attack. Plaintiff also does not allege that he informed Defendant Perez about a continued concern for his safety at the time that he spoke with Perez. Instead, Plaintiff alleges that at some unspecified date after the incident with Plaintiff's cellmate, Defendant Perez agreed with Plaintiff's version of the events. Under these circumstances, Plaintiff has failed to allege any facts to suggest that Defendant Perez was personally involved in the alleged violations of Plaintiff's constitutional rights. Moreover, to the extent that Plaintiff seeks to hold Defendant Perez, a lieutenant at MTU, liable for the actions of his subordinates, as explained above in greater detail, supervisory officials cannot be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability, and supervisory liability cannot be based upon the mere failure to act. *See supra* Section II.C.1.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a claim against Defendant Perez.

### c.     Defendant Brock

Plaintiff alleges that Defendant Brock violated his Eight Amendment rights by providing inadequate medical care for Plaintiff's burns. (*See* Compl., ECF No. 1, PageID.10.)

To satisfy the objective component an Eighth Amendment medical care claim, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To show a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

As to the objective component, at this stage of the proceedings, the Court assumes, without deciding, that the burns that resulted from Plaintiff's cellmate throwing a boiling liquid at Plaintiff constitute a serious medical condition. However, with respect to the subjective component, as explained below, Plaintiff fails to show that Defendant Brock was deliberately indifferent to Plaintiff's medical needs.

Plaintiff alleges that upon his arrival at healthcare following the incident with Plaintiff's cellmate, Plaintiff was seen by Defendant Brock. (Compl., ECF No. 1, PageID.7.) Plaintiff claims that Defendant Brock "minimized Plaintiff's burns." (*Id.*) Plaintiff explained that the pain from the burns on his neck and chest was a level 10 out of 10. (*Id.*) Defendant Brock advised that healthcare could not "do anything more for Plaintiff and that Plaintiff should 'keep [a] cool compress on [his] shoulder and utilize Ibuprofen'" for pain relief. (*Id.*) Here, Defendant Brock made a medical determination that Plaintiff's burns could be treated with a cool compress and Ibuprofen. Although it is clear that Plaintiff disagreed with Defendant Brock's determination and Plaintiff felt that Defendant Brock had "minimized [his] burns," "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a

medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605.

Further, Plaintiff alleges that after his appointment with Defendant Brock, he was unable to obtain a cool compress because they were not available through the prison store, and the Ibuprofen "arrived weeks later due to [the] store delivery system." (Compl., ECF No. 1, PageID.7.) However, Plaintiff does not allege that he informed any medical personnel or correctional officials, let alone Defendant Brock, of Plaintiff's inability to obtain a cool compress and Ibuprofen. Indeed, after Plaintiff's appointment with Defendant Brock, Plaintiff does not allege that he had any further interaction with Brock. Under these circumstances, Plaintiff has failed to show that Defendant Brock had any personal involvement, or knowledge of, Plaintiff's inability to obtain a cool compress and to promptly obtain Ibuprofen. *See Grinter*, 532 F.3d at 575–76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene*, 310 F.3d at 899; *see also Iqbal*, 556 U.S. at 676.

After Plaintiff's initial inability to obtain Ibuprofen, Plaintiff apparently obtained the medication and took it; however, Plaintiff alleges that the Ibuprofen did "not serve the purpose for the burns Plaintiff suffered nor did the medicine cease or decrease the pain or scarring." (Compl., ECF No. 1, PageID.8.) As discussed above, Plaintiff's disagreement with Defendant Brock's treatment decisions, including Brock's decision to prescribe Ibuprofen, is insufficient to state an Eighth Amendment claim. *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Moreover, although Plaintiff clearly did not like how his burns were healing and did not think the Ibuprofen adequately reduced his pain and scarring, Plaintiff fails to allege any facts to suggest that he informed anyone, let alone Defendant Brock, of these issues. *See Grinter*, 532 F.3d at 575–76 (6th Cir. 2008); *Greene*, 310 F.3d at 899; *see also Iqbal*, 556 U.S. at 676. Because

Plaintiff does allege that Defendant Brock was aware of Plaintiff's continued concerns regarding his burns, Plaintiff necessarily fails to show that Defendant Brock was deliberately indifferent to Plaintiff's medical needs.

Accordingly, for these reasons, Plaintiff has failed to allege facts showing that Defendant Brock was deliberately indifferent or that the treatment was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605 (citation omitted). Plaintiff's Eighth Amendment claim against Defendant Brock therefore will be dismissed.

### D.     State Law Claims

Plaintiff also alleges that Defendants violated state law. (*See, e.g.*, Compl., ECF No. 1, PageID.1.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

**<ins>Conclusion</ins>**

The stay of this proceeding that was entered to facilitate mediation will be lifted, and the Court will direct the agency having custody of Plaintiff to commence collection of the filing fee as outlined in the Court's prior order granting Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __October 23, 2023__                    __/s/ Robert J. Jonker__
                                                Robert J. Jonker
                                                United States District Judge